UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22071-Civ-MORENO
MAGISTRATE JUDGE P. A. WHITE

DENIS RUENES RAMOS,                     :

        Petitioner,             :

v.                                      :          REPORT OF
                                                   MAGISTRATE JUDGE
WALTER A. McNEIL,[1]                    :

        Respondent.            :

_____

Introduction

    Denis Ruenes Ramos has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, challenging the constitutionality of his convictions for burglary with assault or battery, two counts of armed sexual battery, and lewd and lascivious molestation entered following a jury verdict in Miami-Dade County Circuit Court, case no. F02-38142.

    This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

    For its consideration of this petition (DE#1), the Court has the response of the state to an order to show cause with multiple exhibits (DE#s12,14).

---

[1]Walter A. McNeil, has replaced James R. McDonough as Secretary of the Florida Department of Corrections, and is now the proper respondent in this proceeding. McNeil should, therefore, "automatically" be substituted as a party under Federal Rule of Civil Procedure 25(d)(1). The Clerk is directed to docket and change the designation of the Respondent.

The petitioner raises the following 8 claims:

1.   The court erred in denying the petitioner an evidentiary hearing on all of his claims, especially the claim that his sentences violate <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) and <u>Blakely v. Washington</u>, 524 U.S. 296 (2004). (DE#1:3).

2.   He was denied effective assistance of counsel, where his lawyer failed to challenge the victim's competency to testify at trial, as well as, the presentation of hearsay statements. (DE#1:3).

3.   He was denied effective assistance of counsel, where his lawyer misadvised and/or refused to allow the petitioner to testify on his own behalf at trial. (DE#1:4).

4.   His due process rights were violated by the presentation of hearsay statements. (DE#1:4).

5.   He was denied effective assistance of counsel, where his lawyer failed to challenge the victim's competency to testify at trial. (DE#1:5).

6.   He was denied effective assistance of counsel, where his lawyer conceded the petitioner's guilt. (DE#1:5).

7.   He was denied effective assistance of counsel, where his lawyer failed to interview witnesses, and conduct a proper investigation of information provided by the petitioner. (DE#1:6).

8.   The trial court erred in denying the petitioner's request for DNA testing on an item introduced into evidence by the prosecution, which the petitioner maintains would have

2

exonerated him. (DE#1:7).

Procedural History

The procedural history of the underlying state court convictions reveals as follows. The petitioner was charged with armed burglary with assault or battery (Count 1), three counts of sexual battery (Counts 2,3,4), lewd and lascivious molestation on a child between the age of twelve and sixteen years (Count 5). (DE#14:Ex.A). He proceeded to trial, where he was convicted as charged,[2] except as to Count 4, where the jury returned a verdict of guilty of attempted sexual battery, as a lesser included offense. (Ex.B). At sentencing, the court vacated the petitioner's conviction as to Count 3, adjudicated him guilty of the remaining offenses, and sentenced him to two concurrent terms of life in prison as to Counts 1 and 2, and two terms of 15 years in prison as to Counts 4 and 5, to run concurrent to the sentence imposed as to Counts 1 and 2. (Ex.C).

The petitioner appealed, raising the sole claim that the trial court erred in denying his motion to suppress statements made while under the influence of alcohol, cocaine, and marijuana, to the extent that he did not have the mental capacity to waive his rights or make a voluntary statement. (Ex.E). On January 3, 2007, the Third District Court of Appeal *per curiam* affirmed the petitioner's convictions without written opinion. Ramos v. State, 947 So.2d 445 (Fla. 3 DCA 2007)(table). Thus, the judgment of conviction became final, for purposes of the AEDPA's one year statute of limitations, at the latest on April 3, 2007, ninety days following the affirmance

---

[2] Specifically, the jury's verdict as to Count 1 reveals that he was convicted of burglary with an assault or battery, checking the boxes finding that "[T]he structure entered was a dwelling" and "[T]here was a human being in the structure." (Ex.B). The jury did not check the box that indicated that in the course of committing the crime, the petitioner "carried, displayed, used, threatened to use, or attempted to use a weapon." (Ex.B).

of the convictions and sentences on direct appeal.[3]

Prior to his conviction becoming final, the petitioner returned to the state court filing a motion to mitigate sentence pursuant to Fla.R.Cr.P. 3.800(c). (Ex.G). On February 2, 2007, the trial court denied the motion. (Ex.H). It appears that an appeal was filed, and on May 21, 2008, the Third District Court of Appeal dismissed the appeal on the finding that "orders denying motions to mitigate brought pursuant to Florida Rule of Criminal Procedure 3.800(c) are not appealable," citing, Jackson v. State, 936 So.2d 775 (Fla. 5th DCA 2006). See Ramos v. State, 981 So.2d 1275 (Fla. 3 DCA 2008)(table), with the mandate issuing on June 16, 2008.[4]

The federal limitations period, however, was not tolled during the pendency of the Rule 3.800(c) motion. See Alexander v. Secretary, Dep't of Corrections, 510 F.3d 1362 (11th Cir. 2007) (motion filed under Fla.R.Cr.P. 3.800(c) to reduce or modify a legal sentence does not constitute an application for state postconviction or other collateral review with respect to the pertinent judgment under §2244(d)(2) and thus does not toll the AEDPA's one-year limitations period); see also, Moqford v. Dep't of Corrections, 294 Fed.Appx. 458 (11th Cir. 2008); Davis v. Barrow, 540 F.3d 1323 (11th Cir. 2008).

Thus, the federal limitations period ran unchecked for over four months, from April 3, 2007, when the petitioner's convictions

---

[3]For federal purposes, a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986); accord, Bond v. Moore, 309 F.3d 770 (11 Cir. 2002); Coates v. Byrd, 211 F.3d 1225 (11 Cir. 2000). Ordinarily, a petition for writ of certiorari must be filed within 90 days of the date of the entry of judgment, rather than the issuance of a mandate. Supreme Court Rule 13.

[4]See on-line docket for case no. 3D08-172 at http://www.3dca.flcourts.org/.

became final, until August 15, 2007, when the petitioner returned to the state court, filing his first Rule 3.850 motion for postconviction relief, raising the same claims raised in this federal petition, as listed above. (Ex.I). After receipt of the state's response thereto (Ex.J), the trial court entered a very lengthy, detailed order denying the Rule 3.850 motion in its entirety. (Ex.K). That denial was subsequently *per curiam* affirmed, <u>citing</u>, <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Ramos v. State</u>, 981 So.2d 1275 (Fla. 3 DCA 2008)(table), with the mandate issuing on June 27, 2008.[5]

Less than one month later, the petitioner then came to this court timely filing this federal habeas corpus petition on July 21, 2008.[6] (DE#1). Petitioner filed his timely petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. <u>Abdul-Kabir v. Quarterman</u>, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); <u>Penry v. Johnson</u>, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); <u>Davis v. Jones</u>, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). The respondent concedes correctly that this petition was filed within the one-year limitations period of 28 U.S.C. §2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, <u>Artuz v. Bennett</u>, 531 U.S. 4 (2000) (pendency of properly-filed state postconviction proceedings tolls the AEDPA limitations period).

It is axiomatic that issues raised in a federal habeas corpus petition must have been fairly presented to the state courts and

---

[5]<u>See</u> on-line docket for case no. 3D08-211 at <u>http://www.3dca.flcourts.org/</u>.

[6]<u>See</u>: <u>Adams v. United States</u>, 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

thereby exhausted prior to their consideration on the merits. Anderson v. Harless, 459 U.S. 4 (1982); Hutchins v. Wainwright, 715 F.2d 512 (11 Cir. 1983). Exhaustion requires that a claim be pursued in the state courts through the appellate process. Leonard v. Wainwright, 601 F.2d 807 (5 Cir. 1979). Both the factual substance of a claim and the federal constitutional issue itself must have been expressly presented to the state courts to achieve exhaustion for purposes of federal habeas corpus review. Baldwin v. Reese, 541 U.S. 27 (2004); Gray v. Netherlands, 518 U.S. 152 (1996); Duncan v. Henry, 513 U.S. 364 (1995); Picard v. Connor, 404 U.S. 270 (1971). These principles will be discussed when relevant in connection with the petitioner's individual claims infra.

<u>Motion to Stay</u>

In this case, however, after the respondent filed its response to the order to show cause, the petitioner filed a motion to voluntarily dismiss the case without prejudice to the filing of a future habeas petition to be prepared with the assistance of an inmate law clerk. (DE#15). No proposed amended petition was attached to his motion. (Id.). Thereafter, an order was entered directing the petitioner to inform the court whether he wished to stay this petition, or to voluntarily dismiss. (DE#16). The petitioner was cautioned that while his current petition was filed within the federal one-year limitations period, the dismissal of the petition would not toll the limitations period, and he might then run afoul of the statute of limitations should he file a petition at a later date. (Id.).

In response, the petitioner filed a motion to stay this habeas corpus petition (DE#17), while he returns to the state court to file a second Rule 3.850, raising "meritorious claims" which were not set forth in the initial Rule 3.850 motion because of the incompetence

of the jailhouse law clerks who assisted him with the preparation of the initial motion. (Id.). The state has filed a response to this motion. (DE#19). The petitioner has filed a reply, realleging it would be a miscarriage of justice not to stay the proceedings. The petitioner, however, has failed to identify the claims he wishes to pursue in the state courts nor good cause for failing to do so from the time he filed the motion to stay in this case in 2008 until the filing of this Report. (DE#20).

This Court agrees with the respondent that a stay of the instant federal proceeding while the petitioner returns to the state forum to attempt to exhaust additional, unidentified claims in a second Rule 3.850 motion is not appropriate in this case. In Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court approved the use of a "stay and abeyance" procedure in certain instances where a "mixed" federal habeas corpus application contains both exhausted and unexhausted claims. However, a stay and abeyance is available in limited circumstances, only if (1) the petitioner had "good cause" for failing to exhaust the claims in state court, (2) the unexhausted claims are "potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." Id. at 277-78.

Thus, a "stay and abeyance should be available only in limited circumstances." Rhines v. Weber, 125 S.Ct. 1528, 1534-35 (2005). "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," ... and even showing good cause, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Id. "[I]f a petitioner engages in abusive litigation tactics or intentional

delay, the district court should not grant him a stay at all." <u>Id.</u>
Further, any stay granted must be tempered with reasonable time
limits, and if a stay is not granted, "the court should allow the
petitioner to delete the unexhausted claims and to proceed with the
exhausted claims if dismissal of the entire petition would
unreasonably impair the petitioner's right to obtain federal
relief." <u>Id.</u>

<u>Rhines</u> does not apply in this case for numerous reasons. First,
the petitioner has come forward with nothing to show good cause for
his failure to exhaust these unidentified claims in the state
courts in a timely fashion. Second, <u>Rhines</u> does not apply in this
case, because the instant petition is not a "mixed" federal petition
in that the petitioner has not presented both exhausted and
unexhausted claims. He has solely raised exhausted grounds for
relief and he has not filed a proposed amended petition. Third, the
petitioner has failed to demonstrate good cause for his failure to
exhaust any potential grounds for relief in a timely fashion (i.e.,
before the expiration of the one-year limitation period).

Even if the petitioner were able to correct that deficiency,
any subsequent Rule 3.850 motion would be subject to dismissal in
the state forum as successive. Review of the petitioner's on-line
docket for the underlying criminal case, located at
http://www2.miami-dadeclerk.com/cjis/, reveals that the petitioner
has not filed any postconviction motion, and the last activity on
the docket was in July 2008, when the court received the mandate
following the appeal of the Rule 3.850 motion.

Moreover, under 28 U.S.C. §2242, even if a stay were granted,
and the petitioner returned to the state forum to raise additional
claims in a second Rule 3.850 motion, the law is clear that a habeas
petition "may be amended or supplemented as provided in the rules

of procedure applicable to civil actions." Federal Rule of Civil Procedure 15 governs amended pleadings and provides that once a responsive pleading has been served, leave of court is required.

When considering whether an amendment is appropriate, the court must be mindful that the new grounds for relief cannot be supported by facts that differ in both time and type from those the original petition raised, because they would then not relate back to the original petition for purposes of the one-year statute of limitations. See Mayle v. Felix, 545 U.S. 644, 650, 125 S.Ct. 2562, 2566 (2005)(holding that "[a]n amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in time and type from those the original pleading set forth."). See also Davenport v. United States, 217 F.3d 1341, 1344-46 (11 Cir. 2000)(holding that a claim which was not part of the original timely motion to vacate does not relate back to the original claims and is time-barred if it does not arise out of the same conduct, transaction or occurrence), citing, United States v. Craycraft, 167 F.3d 451, 456-7 (8 Cir. 1999)(holding that out-of-time claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely claims of ineffective assistance of counsel raised in the initial timely-filed §2255 motion), cert. denied, 532 U.S. 907 (2001); Robles v. Duncan, 2001 WL 1603933, *4-6 (N.D.Cal. 2001)(holding in §2254 proceeding that amended petition was untimely, therefore, the equal protection claim contained therein was time-barred), citing, Davenport, 217 F.3d at 1344-46.

Thus, even if this petition were stayed and the petitioner later returned to the court to file an amended petition, in order to raise additional claims, after exhausting those claims in the state forum, those claims would have to relate back to the claims raised in the timely filed habeas petition. The petitioner, however,

has never identified in this habeas proceeding which new claims he wishes to pursue in the state courts, but merely states that he wishes to do so. Based upon the record in this case, a stay of this federal habeas corpus proceeding is clearly not appropriate. <u>Rhines v. Weber</u>, 544 U.S. 269 (2005). It is therefore recommended that the petitioner's motion for voluntary dismissal (DE#15) and motion to stay (DE#17) be denied.

<u>Facts Adduced At Trial</u>

For an appreciation of the issues involved in this proceeding, a full review of the facts adduced at trial is essential. The victim, S.H., a minor testified that on December 28, 2002, when she was fourteen years old and living in Hialeah, the petitioner came into her room in the early morning hours, at which time he fondled her, then ripped off her shirt, kissing her breasts and trying to penetrate her vagina and anus with his penis. (T.352-61,394). The victim fought back, scratching the petitioner in the face, at which time he struck her in the head. (T.357-59,374). According to the victim, the petitioner smelled of alcohol, and threatened to kill her if she didn't keep quiet. (T.358,384,390). During the attack, the victim felt something sharp in her side, like a knife, and later identified a knife she kept in her bedroom jewelry box which had been left on the floor after the petitioner left the room. (T.375-76,635). No fingerprints, however, were taken of the knife. (T.501,559). After the petitioner ran out the front door, the victim ran to a neighbor's house and called the police. (T.371,388,398,409). Evidence revealed that a window from another bedroom in the home had been broken, and fingerprint tests established that the prints lifted from the inside ledge of the window belonged to the petitioner. (T.368,485,494-97,556).

After receiving a dispatch, Officer Sanchez detained the

10

petitioner approximately four blocks from the home. (T.433). Officer Sanchez testified that the petitioner did not appear to be under the influence of drugs or alcohol, although he did have marijuana in his possession at the time of his arrest. (T.435,437,440). The victim was brought to the scene, at which time she identified the petitioner as her assailant. (T.372,388,437,452). Dr. Simmons with the Rape Treatment Center testified that there was no evidence of penetration, but there was a superficial cut and redness to the external anal area. (T.473-474,479). During the victim's examination, swabs were taken which showed the presence of the petitioner's DNA on the victim's anal area only. (T.475,481,526-528,538,545,579-580).

Detective Elosequi testified that after the petitioner was advised of and waived his constitutional rights, he kept saying the drugs made him do it, and further indicated that he had drunk 20 beers, snorted cocaine, and used marijuana the night prior to the incident. (T.560-63,569,645). According to Detective Elosequi, the petitioner did not appear intoxicated, however, he did sob several times during the interview. (T.646). The petitioner claims that on the night of the incident he had been out with the victim's mother, and later went looking for her at her home, but when he knocked on the door, and no one answered, he went around the house, and climbed through a window. (T.637-640,658). He stated he was unaware at that time that the victim was home, and claims he only touched her with his penis. (T.648). The petitioner's statement was recorded and played for the jury. (T.79,571-76,583-83).

<u>Discussion of the Claims</u>

Turning to the merits of the claims raised in the collateral proceeding, Section 104(d) of the AEDPA [28 U.S.C. §2254(d)] sets out a significant new restriction upon the ability of federal courts

to grant habeas corpus relief. Under the AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." See Stewart v. Sec. Dept. of Corrections, 476 F.3d 1193, 1208 (11th Cir. 2007). See also Parker v. Sec.Dept.of Corrections, 331 F.3d 764 (11th Cir. 2003). The AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It is undisputed that the AEDPA applies in the instant case.

Where a petitioner's claim(s) raises a federal question,[7] that was exhausted, is not procedurally barred, and was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See e.g., Ferguson v. Culliver, 527 F.3d 1144, 1146 (11 Cir. 2008).

Pursuant to 28 U.S.C. §2254(d), habeas relief is available only in cases where the claims were adjudicated on the merits and the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in state court." Crowe v. Hall, 490 F.3d 840, 844 (11th Cir. 2007), cert. den'd, ___ U.S. ___, 128 S.Ct. 2053 (2008); Williams  v. Taylor, 529 U.S. 362 (1999). Clearly established federal law embraces "the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision." Stewart v. Sec'y, Dep't of Corrs., 476 F.3d 1193, 1208 (11th Cir. 2007). Further, a decision is

---

[7] See 28 U.S.C. §2254(a)("a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

"contrary to" established law if (1) the state court arrived at an opposite conclusion on a question of law as interpreted by the Supreme Court or (2) the court arrived at a different result when confronted with "materially indistinguishable" facts from relevant Supreme Court precedent. Jennings v. McDonough, 490 F.3d 1230, 1236 (11th Cir. 2007), cert. den'd, ____ U.S. ___, 122 S.Ct. 846 (2008). An application of established law is unreasonable "if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context." Id.

"[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003)(quoting Early v. Packer, 537 U.S. 3, 7-8 (2002). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Moreover, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d at 844.

Regarding his ineffective assistance of counsel claims, in order to prevail as to those claims, the petitioner must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been

different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995). Prejudice in the sentencing context requires a showing that the sentence was increased due to counsel's error. Glover v. United States, 531 U.S. 198, 203-204 (2001).

The Eleventh Circuit reviews an attorney's performance with deference, and looks not for "what is prudent or appropriate, but only what is constitutionally compelled." Hardwick v. Crosby, 320 F.3d 1127, 1161 (11 Cir. 2003), citing Chandler v. United States, 218 F.3d 1305, 1313 (11 Cir. 2000) (en banc)(When assessing a lawyer's performance, "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."). The court's role in reviewing ineffective assistance of counsel claims is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." Van Poyck v. Florida Dept. of Corrections, 290 F.3d 1318, 1322 (11 Cir.), cert. den'd,___ U.S. ___, 123 S.Ct. 70 (2002), quoting, Strickland v. Washington, supra at 690. Review of counsel's conduct is to be highly deferential. Spaziano v. Singletary, 36 F.3d 1028, 1039 (11 Cir. 1994), and second-guessing of an attorney's performance is not permitted. White v. Singletary, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); Atkins v. Singletary, 965 F.2d 952, 958 (11th Cir. 1992).

In **claim one**, the petitioner asserts that the court erred in denying the petitioner an evidentiary hearing on all of his claims, especially the claim that his sentences violate Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 524 U.S. 296 (2004). (DE#1:3).

First, a claim arising from the court's failure to hold an evidentiary hearing on a collateral motion is not cognizable in a federal habeas petition. Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Likewise, a state's interpretation of its own rules or statutes does not raise a federal constitutional issue unless it rises to a level of a denial of fundamental due process. Wainwright v. Goode, 464 U.S. 78 (1983), reh'q denied, 465 U.S. 78 (1984). See also Redman v. Dugger, 866 F.2d 387 (11 Cir. 1989); Machin v. Wainwright, 758 F.2d 1431, 1433 (11 Cir. 1985); Carrizales v. Wainwright, 699 F.2d 1053 (11 Cir. 1983). No such showing has been made here.

Moreover, when a federal court considers whether habeas corpus is warranted, the decision is limited to whether a conviction violated the Constitution, laws, or treaties of the United States. 28 U.S.C. §2254; Rose v. Hodges, 423 U.S. 19, 21 (1975)(per curiam). A state petitioner's right to an evidentiary hearing on a collateral motion is a question of state law. Therefore, such a claim is not cognizable in this federal habeas corpus petition. Consequently, the petitioner is entitled to no relief on this claim. See Williams v. Taylor, supra.

Briefly, however, the claim also fails on the merits. In the state forum where a similar claim was raised, the petitioner argued

that counsel was ineffective because he failed to argue that the petitioner's sentences were unlawful as they were improperly enhanced based on findings made by the trial court. Specifically, he claimed that the trial court erred by upwardly departing from the sentencing guidelines on the bases of a letter written by the victim, and that the victim trauma was a factor which was not based on any finding of the jury, in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), and it progeny, <u>United States v. Booker</u>, 543 U.S. 220 (2005).[8] This claim is meritless.

In this case, none of the sentences imposed exceeded the statutory maximums. Specifically, as to Counts 1 and 2, both offenses were punishable by up to life in prison.[9] His convictions as to Counts 4 and 5, both second degree felonies, were punishable for a term of up to fifteen years in prison.[10] Under these circumstances, no error exists under <u>Apprendi</u> or its progeny, <u>Booker</u> as they did not exceed the statutory maximum for each of the offenses. See <u>Jewell v. Crosby</u>, 142 Fed.Appx. 371, 373 (11 Cir.

---

[8]In brief, the United States Supreme Court held in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." <u>Id</u>. at 490. In its later opinion in <u>Blakely v. Washington</u>, 542 U .S. 296 (2005), the Supreme Court explained that under <u>Apprendi</u> "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." <u>Id</u>. at 303-04. In a case decided shortly after <u>Blakely</u>, the Supreme Court explicitly held that <u>Blakely</u> applies to the Federal Sentencing Guidelines. See <u>United States v. Booker</u>, 543 U.S. 220 (2005).

[9]<u>Fla.Stat.</u>§794.011(3) provides that a person who commits sexual battery on a person 12 years or older, without that person's consent, and in the process thereof uses or threatens to use a deadly weapon or uses actual physical force likely to cause serious personal injury commits a life felony.

<u>Fla.Stat.</u> §810.02(2)(a) provides that burglary is "a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment ... if in the course of committing the offense, the offender (a) makes an assault or battery upon any person...."

[10]<u>See</u> <u>Fla.Stat.</u> §794.011 and <u>Fla.Stat.</u> §800.04(5)(c)2.

2005); <u>United States v. Sanchez</u>, 269 F.3d 1250, 1262-63 (11th Cir. 2001). It should further be noted that in Florida, "the permissible range for sentencing shall be the lowest permissible sentence up to and including the statutory maximum, as defined in s. 775.082, for the primary offense and any additional offense before the court for sentencing." <u>See</u> <u>Fla.Stat.</u> §921.0024(2) (2002). Thus, <u>Blakely</u> and <u>Booker</u> were not implicated as the trial court was permitted under its sentencing regime to sentence the petitioner up to the statutory maximum for each of the offenses.

Moreover, given the evidence adduced at trial regarding the physical injuries suffered by the victim at the hands of the petitioner, any error in this regard was, at worst, harmless. <u>See</u> <u>Washington v. Recuenco</u>, ___ U.S. ___, 126 S.Ct. 2546 (2006)(holding that *Apprendi/Blakely* error is subject to harmless-error analysis). <u>See also</u> <u>Galindez v. State</u>, 955 So.2d 517 (Fla. 2007)(holding that violation of right to jury trial at sentencing under *Apprendi* and *Blakely* was subject to harmless error analysis).

Accordingly, the trial court properly denied the petitioner relief on his sentencing challenge raised in his Rule 3.850 motion, which ruling was affirmed on appeal. <u>See</u>  <u>Ramos v. State</u>, 981 So.2d 275 (Fla. 3 DCA 2008). As correctly found by the court in the state forum, the petitioner was not sentenced beyond the statutory maximum for each offense. Even if the victim's letter had been improperly considered at sentencing, it appears from the record that the lead detective, Detective Joe Elosequi, also urged that the petitioner receive the maximum sentence possible. (Ex.K:10). Nevertheless, in Florida, the victim of a crime has an absolute right to be heard regarding the sentence to be imposed on a defendant. <u>See</u> <u>Fla.Stat.</u> §921.143(1)(b). Thus, the victim's letter was proper before the court. Moreover, at sentencing, the trial court indicated that it had considered not only the victim's letter, but also the

petitioner's statements, the nature of the crime, and the testimony and evidence at trial and sentencing in fashioning an appropriate sentence. (Ex.K:11). On the record before this court, the trial court in the Rule 3.850 proceeding did not err in determining the claim was meritless. Thus, the petitioner has failed to demonstrate either in the state forum or in this habeas proceeding that counsel was either deficient or that he suffered prejudice under <u>Strickland</u>.[11] Consequently, the state court's rejection of the claim should not be disturbed here. <u>See</u> 28 U.S.C. §2254(d); <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim two**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to challenge the victim's competency to testify at trial, as well as, the presentation of hearsay statements. (DE#1:3).

<u>Child Hearsay Statements</u>. The petitioner complains that counsel was ineffective for failing to object to the admission of hearsay statements of the minor victim. The petitioner, however, is not entitled to federal habeas corpus relief on this claim as the claim is not cognizable in this federal habeas corpus proceeding. As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence since the state court has wide discretion in determining whether to admit evidence at trial. <u>See</u> <u>Lynd v. Terry</u>, 470 F.3d 1308, 1314 (11th Cir. 2006); <u>Alderman v. Zant</u>, 22 F.3d 1541, 1555 (11 Cir. 1994). <u>See also</u> <u>Baxter v. Thomas</u>, 45 F.3d 1501, 1509 (11 Cir. 1985)(federal habeas corpus is not vehicle to correct evidentiary rulings). Only where evidentiary rulings of the state

---

[11]In the event that the state courts did not address on the merits the exact claim raised in the instant petition as ground one, rendering the standard established by the AEDPA not applicable, a <u>de</u> <u>novo</u> review of the claim indicates that the petitioner is not entitled to relief. <u>See</u> <u>Romine v. Head</u>, 253 F.3d 1349, 1365 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1011 (2002).

court deny a petitioner of his fundamental constitutional protections will federal courts grant habeas corpus relief. Sims v. Singletary, 155 F.3d 1312 (11 Cir. 1998)(denying habeas corpus relief on a claim that a motion for mistrial was wrongfully denied). See also Estelle v. McGuire, 502 U.S. 62 (1991); Osborne v. Wainwright, 720 F.2d 1237, 1238 (11 Cir. 1983); Jameson v. Wainwright, 719 F.2d 1125 (11 Cir. 1983); DeBenedictus v. Wainwright, 674 F.2d 841, 843 (11 Cir. 1982). Moreover, such evidentiary rulings are subject to the harmless error analysis and will support habeas relief only if the error "had substantial and injurious effect or influence in determining the jury's verdict." Sims v. Singletary, 155 F.3d at 1312, quoting Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Such was not the case here.

Notwithstanding, the claim also fails on the merits. Florida created a hearsay exception for a child's statements regarding sexual abuse. See Fla.Stat. §90.803(23).[12] According to the

---

[12]Florida Statutes §90.803(23) (West 2000) provided as follows:

Hearsay exception; statement of child victim.--
(a)     Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:
        1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and
        2.    The child either:
        a.    Testifies; or
        b.    Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).

(b)     In a criminal action, the defendant shall be notified no later than 10 days before trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as evidence at trial. The notice shall include a written statement of the content of the child's statement,

petitioner, the state court violated the subject statute because it failed to make a finding of reliability prior to allowing the statements to be admitted, and the prosecution failed to file a notice of its intent to rely on such statements. (Ex.G:34).

In order for the child hearsay exception under Fla.Stat. §90.803(23) to apply, the victim in this case must have the "physical, mental, emotional, or developmental age of 11 or less." See Fla.Stat. §90.803(23)(2002). At trial, the victim, S.H., testified she was born on August 22, 1987, was 14 years old at the time of the offenses, and was 16 years old at the time she testified at trial. (T.352,382). When the identical claim was raised in the Rule 3.850 proceeding, it was denied on the finding that the claim was without merit because the child hearsay exception did not apply given the child's age at the time of trial. Consequently, it is clear that any objection in this regard would have failed. Thus, the petitioner cannot establish either deficient performance or prejudice pursuant to Strickland and is therefore entitled to no relief on this claim. In conclusion, the rejection of the claim in the Rule 3.850 proceeding was proper, did not offend federal constitutional principles, and should not be disturbed here. Williams v. Taylor, supra.

Moreover, viewing the witnesses' testimony regarding the victim's statements in light of the other evidence adduced at trial, it is clear that any alleged hearsay statements did not render the trial as a whole "fundamentally unfair."[13] There was overwhelming

---

the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.

(c)    The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.

[13]It is noted that the federal law governing hearsay statements made under circumstances such as these has changed dramatically with the Supreme Court decision issued in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158

evidence against the petitioner, which consisted of more than the now-challenged hearsay evidence. Consequently, there is no possibility that admission of the hearsay statements had a "substantial and injurious effect or influence" in the jury's decision. Here, there was powerful testimony from the victim herself about the subject criminal incidents, the petitioner's confession, and the petitioner's DNA evidence recovered from the victim's anal area. Accordingly, the appellate court's affirmance of the trial court's denial of the claim in the Rule 3.850 proceeding, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should therefore stand. 28 U.S.C. §2254(d)(1); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).

Child's Competency. The petitioner also asserts that counsel was ineffective for failing to challenge the victim's competency to testify at trial. On appeal following the denial of the claim by the trial court in the Rule 3.850 proceeding, the petitioner conceded that the record demonstrates that the victim "was relatively articulate and intelligent," but claims she was not capable of separating "fact from fantasy and her testimony was therefore too unreliable and contained some unusual and non-responsive answers to use as a basis for adjudicating defendant guilty of the charges."

---

L.Ed.2d 177 (2004)(holding that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial" unless the declarant is unavailable and the accused had a prior opportunity to cross-examine the declarant). After <u>Crawford</u>, the lawfulness of the subject statute was challenged. <u>See e.g.</u>, <u>Contreras v. State</u>, 910 So.2d 901 (Fla. 4 DCA 2005)(holding that <u>Fla.Stat</u>. §90.803(23) no longer viable under certain circumstances after <u>Crawford</u> and finding videotaped statement to child protective service worker testimonial), *approved in part and quashed in part*, 979 So.2d 896 (Fla. 2008). Even if the petitioner claims that the Confrontation Clause was violated pursuant to <u>Crawford</u>, <u>Crawford</u> announced a new rule that is not retroactively applicable on collateral review. <u>Whorton v. Bockting</u>, ___ U.S. ___, 127 S.Ct. 1173, 1177, 167 L.Ed.2d 1 (2007). <u>See also</u> <u>Espy v. Massac</u>, 443 F.3d 1362, 1367 (11 Cir. 2006). Moreover, since the declarant, the victim, was called as a state witness in this case and was, therefore, subject to cross-examination, there is no Confrontation Clause violation. <u>Crawford</u>, 541 U.S. at 59.

Review of the record reveals that when the identical claim was raised in the petitioner's Rule 3.850 proceeding, the trial court denied the claim, finding in pertinent part as follows:

> ...There was absolutely no basis for such a challenge. The Victim in this case was fourteen at the time of the crime and was sixteen and in the ninth grade at Miami Beach Senior High School at the time she testified at trial. She was articulate and responsive to the attorneys' questions (see trial testimony of Victim, attached hereto). The Defendant has not stated any specific basis for this claim, but makes a general claim that his attorney should have made such a challenge to the victim. The claim has no merit and is denied.

(Ex.K:13-14). That decision was *per curiam* affirmed <u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Ramos v. State</u>, 981 So.2d 275 (Fla. 3 DCA 2008).

Independent review of the victim's trial testimony in the state forum confirms that the trial court's conclusion was not erroneous. The victim was articulate and responsive to questions posed during direct and cross examination. <u>See</u> T.352-395. Even if counsel had challenged the competency of the victim, no showing has been made in the state forum nor in this habeas proceeding that such a challenge would have succeeded. Consequently, he cannot establish deficient or prejudice arising from counsel's failure to pursue this nonmeritorious claim. Thus, the state court's rejection of the claim should not be disturbed here. <u>Williams v. Taylor</u>,<u>supra</u>.

In **claim three**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer misadvised and/or refused to allow the petitioner to testify on his own behalf at trial. (DE#1:4). This claim is clearly refuted by the record which reveals as follows.

After the prosecution rested, the following colloquy was conducted on the record regarding the petitioner's right to testify:

22

```
COURT:        Mr. Ramos, at this point in your trial, you need to make
              a decision as to whether or not you are going to be
              testifying in this case. I spoke to you about that on
              Monday after we selected the jury.

              And as you have heard me say over and over again, you
              have the absolute right not to testify. You are
              different from any other person on the planet. Anybody
              else, your attorney or the State Attorney can issue a
              subpoena to compel them to testify. Nobody can compel
              you to testify.

              However, you also have a right, if you want to, to
              testify at your trial. You should listen to the advice
              of your attorney and if you have family members you
              should listen to their advice, but, ultimately the
              decision is only yours to make.

              Have you had enough time to speak to your attorney about
              this decision?

DEFENDANT:    Yes.

COURT:        All right. Now, your attorneys have told me that it is
              your decision not to testify.

              Is that correct?

DEFENDANT:    Yes.

COURT:        Do you have any questions that you want to ask me about
              that decision or what that means?

DEFENDANT:    No.

COURT:        Okay....
```

(T.674-75).

    Of course, a criminal defendant has a fundamental
constitutional right to testify in his or her own behalf at trial.
Rock v. Arkansas, 483 U.S. 44, 49-52 (1987); United States v.
Teague, 953 F.2d 1525, 1532 (11 Cir. 1992) (en banc). This right is
personal to the defendant, and cannot be waived by the trial court
or defense counsel. Teague, supra; Brown v. Artuz, 124 F.3d 73, 77-
78 (2 Cir. 1997). The proper vehicle for an argument that a
defendant's right to testify was violated by his trial counsel is
a claim of ineffective assistance of counsel, which requires
analysis under Strickland v. Washington, 466 U.S. 668 (1984).

23

Gallego v. United States,174 F.3d 1196 (11 Cir. 1999)(citing Teague, 953 F.2d at 1534); Brown, 124 F.3d at 79-80; Sexton v. French, 163 F.3d 874, 882 (4 Cir.), cert. den'd, 120 S.Ct. 139 (1999). United States v. Tavares, 100 F.3d 995, 998 (D.C. Cir.1996).

In Teague, supra, the Eleventh Circuit held that an attorney who refused to accept the defendant's decision to testify, or failed to inform him of his absolute right to testify "would have neglected the vital professional responsibility of ensuring that the defendant's right to testify is protected," and counsel's action would not have fallen "within the range of competence demanded of attorneys in criminal cases." 953 F.2d at 1534 (quoting Strickland v. Washington, supra). The Teague court, having the benefit of testimony from an evidentiary hearing on the defendant's motion for a new trial, found that counsel's performance had not been deficient, and therefore did not address the prejudice prong of the Strickland analysis. Teague, 953 F.2d at 1535.

Not all assertions of ineffective assistance of counsel with regard to the right to testify or not testify warrant an evidentiary hearing. Underwood v. Clark, 939 F.2d 473 at 476 (7 Cir. 1991)(barebones assertion by a defendant is insufficient to require a hearing on a claim that the right to testify was denied, greater particularity and some substantiation such as an affidavit from the lawyer who allegedly forbade his client to testify are necessary to give the claim sufficient credibility to warrant a further investment of judicial resources); Siciliano v. Vose, 834 F.2d 29 (1 Cir.1987)(defendant's conclusory allegation that his attorney refused to allow him to testify in his own behalf was insufficient to entitle him to hearing on issue of whether his right to testify was violated); Passos-Paternina v. United States, 12 F. Supp. 231, 239-40 (D. Puerto Rico 1998).

The Fourth Circuit has held that a hearing was not necessary where the defendant suffered no prejudice under <u>Strickland</u>, <u>supra</u>, because "his testimony at trial only helped his case...." <u>Sexton v. French</u>, 163 F.3d 874, 883 (4 Cir. 1998), <u>cert. den'd</u>, 120 S.Ct. 139 (1999). As stated, the Eleventh Circuit has not determined whether a conclusory allegation is sufficient to warrant further inquiry, such as the grant of a hearing.[14] <u>See</u>, <u>e.g.</u> <u>Brown</u>, 124 F3.d at 80. However, it is clear that a defendant must prove prejudice in order to be entitled to relief on such a claim. <u>See Teaque</u>, <u>supra</u>.

In order to satisfy the prejudice prong, the movant must demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u>, <u>supra</u>. at 694. In other words, the movant must prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687; <u>see also</u>, <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993), <u>citing</u>, <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986)("The essence of an ineffective assistance of counsel claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). In <u>Fretwell</u>, the Supreme Court also concluded that "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." <u>Fretwell</u>, <u>supra</u> at 369, <u>citing</u>, <u>United States</u>

---

[14]In <u>Gallego v. United States</u>, 174 F.3d (11 Cir. 1999) the Court rejects a "per se credit counsel in case of counsel rule," with regard to credibility findings in evidentiary hearings, but does not address the issue of when a hearing is actually required.

v. Cronic, 466 U.S. 648, 653 (1984). The touchstone of an ineffective-assistance claim is the fairness of the adversary proceeding, and "in judging prejudice and the likelihood of a different outcome, '[a] defendant has no entitlement to the luck of a lawless decisionmaker.'" Fretwell, supra at 370, citing, Strickland, supra at 695.

It is clear that the petitioner thoroughly discussed the issue of testifying with his attorney. Under oath, the petitioner acknowledged he had a right to testify, but elected against doing so. The petitioner denied needing additional time to discuss the issue with counsel and, therefore, knowingly and voluntarily waived his right to testify on his own behalf. When the identical claim was raised in the Rule 3.850 motion, it was denied by the state court, on the following finding:

> The Defendant contends that his attorney was ineffective for misadvising him of his right to testify by telling him that if he did testify he was going to lose the trial. It is probably true that if the Defendant had testified at trial consistent with his testimony at the sentencing hearing there was a strong likelihood that he would have been convicted; so if his attorney had so advised him, that advice would have been accurate. Nonetheless, it was the Defendant's decision to testify or not testify, and the Defendant was colloquied regarding this decision prior to the commencement of jury selection ... and after the state had rested their case...
>
> The Defendant's [sic] proffers in his motion what his trial testimony would have been. (p.30-33 of Defendant's motion). According to this proffer, the Defendant would have testified that 'the victim called him to her room and voluntarily kissed him, fondled him and invited him to have sex with her' and that everything was consensual (p.31). This proffer contradicts the Defendant's testimony at the sentencing hearing where he stated, 'I do admit that I had a lewd and lascivious conduct with the young lady' (p. 22, sentencing hearing). 'When I opened the door to that bedroom is when I found the girl. She was not covered. She was wearing panties. And she was -- she had been -- was nude but had bed sheets over her. She was frightened. She jumped on me and lunged at me and scratched my face. I was all high and on drugs and I tried to defend myself so I jumped on top of her and I told her to shut up.' 'Shut up. I am not going to do anything to you.' She said, 'Mister, leave me alone' (p.23, sentencing hearing). He went on to explain, 'I do admit that I had lewd and lascivious conduct. I feel guilty....I just ask--I know that she feels very badly because of the disgusting thing I did. I asked her to forgive me.' (p.23, sentencing hearing).

> In addition, the proffer conflicts with the statement he gave to the police after his arrest (see Defendant's post-arrest statement, attached hereto). In his taped statement, the Defendant admitted that when he saw the young victim, 'I launched on top of her and went crazy' (p. 5, statement). He described how she scratched him to defend herself (p.14,18,39) and described what he did to her as 'like a violence and abuse....[S]he had to defend herself' (p.18). He acknowledged that, 'I'm guilty and that's it' (p.43).
>
> The claim has no merit and is denied.

(Ex.K:11-13). That decision was subsequently affirmed on appeal. Ramos v. State, 981 So.2d 1275 (Fla. 3 DCA 2008).

Thus, it is apparent that the petitioner's allegation in this habeas proceeding is belied by his sworn statements before the court. He has therefore failed to establish deficient performance or prejudice arising from counsel's alleged failure to permit the petitioner to testify on his own behalf. See Strickland v. Washington, supra.

Even if the petitioner had testified as proffered, asserting that the victim consented to the sexual relations, and also attempted to refute the prosecution's case regarding the nature of the injury to the victim's anal area, no showing has been made in this collateral proceeding, nor in the state forum where the identical claim was raised, that this would have affected the outcome of the proceeding, given the sufficiency of the evidence, viewed in the light most favorable to the prosecution. In fact, his testimony would have been subject to cross-examination and impeachment as it contradicts his post-arrest statement to police. Regardless, the evidence at trial amply demonstrates that the petitioner was guilty of the offenses. Thus, it is not likely that the result of the trial would have been different had the petitioner testified as proffered. Consequently, the petitioner is not entitled to relief on this claim.

Moreover, the petitioner's claim that counsel failed and/or refused to allow him to testify on his own behalf is self-serving and not supported by any affidavit from counsel.[15] Counsel could have well believed that the petitioner's version of the events was not credible or too suspect to put the petitioner on the stand, and would subject the petitioner to detrimental cross-examination regarding the events and his post-arrest statements, which would have negatively impacted upon the petitioner's credibility. Such a strategic decision should not be second-guessed here. See McNeal v. Wainwright, 722 F.2d 674 (11 Cir., 1984); United States v. Costa, 691 F.2d 1358 (11 Cir. 1982). Under these circumstances, no deficient performance or prejudice has been established arising from counsel's misadvice or refusal to allow the petitioner to testify on his own behalf. In conclusion, the state's court rejection of this claim was proper and should not be disturbed here. Williams v. Taylor, supra.

In **claim four**, the petitioner asserts that his due process rights were violated by the presentation of hearsay statements. (DE#1:4). According to the petitioner, the court abused its discretion by permitting the testimony of the victim's neighbor, her daughter, and a detective. (Id.). To the extent this is a mere reiteration of the arguments raised in relation to claim two above,

---

[15]See, e.g., White v. United States, 99 Ci. 11809, 2000 WL 546426 at *5 (S.D.N.Y. 2000)(Where petitioner asserted that held his counsel that he wanted to testify, but counsel rested the defenses case without calling petitioner, court found that petitioner's affidavit "fail[ed] to substantiate his allegation that trial counsel's performance was deficient." "'[T]he defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.'", quoting, United States v. Castillo, 14 F.3d 802, 805 (2nd Cir.), cert. den'd, 513 U.S. 829 (1994); see also, e.g., Jeffries v. United States, 234 F.3d 1268 (6th Cir. 2000)(table)(Petitioner "has not shown that counsel's performance was deficient as he merely made conclusory, self-serving allegations that his attorney refused to let him take the stand."); Torres v. Stinson, 2000 WL 1919916 at *5 (E.D. N.Y. 2000)("A barebones assertion by a defendant that his counsel failed to inform him of his rights is insufficient to establish an ineffective assistance of counsel claim under Strickland.").

it should be denied for the reasons expressed therein. Moreover, despite the respondent's waiver of exhaustion, it appears that a portion of this claim is unexhausted and prospectively procedurally barred from review in this habeas proceeding. The claim as phrased, that the court abused its discretion in allowing the testimony of the victim's neighbor and daughter, was not presented to the trial court, but instead was raised on appeal following the denial of the Rule 3.850 motion. Under these circumstances, that portion of this claim is unexhausted and prospectively procedurally barred from review in this habeas proceeding. See Picard v. Connor, 404 U.S. 270 (1971); Castilles v. Peoples, 489 U.S. 346 (1989); Fortner v. McNeil, 2008 WL 651810 *20 (M.D. Fla. 2008). Likewise, the petitioner has not demonstrated cause or prejudice arising from his failure to exhaust this claim. Therefore, he is not entitled to review of the claim in this habeas proceeding.

It should also be noted that, even if the court permitted the admission of the statements as alleged, such an evidentiary ruling does not form a basis for federal habeas corpus relief. See Hatles v. Lockhart, 990 F.2d 1070, 1072 (8th Cir. 1993). The court had wide discretion in determining whether to admit such evidence. Lynd v. Terry, supra. Moreover, even if counsel had objected on the bases proffered by the petitioner, no showing has been made either in the state forum or in this habeas proceeding that the objection would have been sustained. No due process violation has been demonstrated in this collateral proceeding. Consequently, the petitioner cannot establish either deficient performance or prejudice under Strickland. He is therefore entitled to no relief on this claim, and the state court's rejection of the claim should not be disturbed here. Williams v. Taylor, supra.

In **claim five**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to

challenge the victim's competency to testify at trial. (DE#1:5). This is merely a reiteration of the arguments raised in relation to claim two above and should be denied for the reasons expressed therein. As will be recalled, the victim was 14 years old at the time of the offenses, and 16 when she testified at trial. No showing was made in the state courts nor in this habeas proceeding that the victim was anything other than competent to testify at trial. Such a bare and conclusory allegation warrants no further discussion and is subject to summary dismissal. <u>Machibroda v. United States</u>, 368 U.S. 487 (1962). Likewise, as correctly found by the state court in its denial of the Rule 3.850 motion, the victim was competent and able to coherently answer the questions posed to her by the prosecution and defense. Consequently, even if counsel had challenged the victim's competency, no showing has been made that he would have been successful in this regard. Thus, no deficient performance or prejudice under <u>Strickland</u> has been established and the petitioner is entitled to no relief on this claim. Therefore, the state court's rejection of this claim, which was premised on <u>Strickland</u>, was proper and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

In **claim six**, the petitioner asserts that he was denied due process of law and effective assistance of counsel, where his lawyer conceded the petitioner's guilt as to the burglary offense. (DE#1:5). According to the petitioner, he agreed to present as part of his defense that he had been invited by the victim's mother to enter into her home by using the window if she was not there. (<u>Id</u>.:6). He denies, however, agreeing to a concession of guilt, and claims, even if he so agreed, it was due to a defective translating machine which precluded him from having a full understanding of the nature of the agreement. (<u>Id</u>.).

When the identical claim was raised in the petitioner's Rule

3.850 proceeding, the trial court denied the claim, finding in pertinent part that "the claim is clearly not supported by the record" as the petitioner "knew and agreed with the strategy employed by his trial counsel to try and minimize the damage in a clearly overwhelming case." (Ex.K:14-15). That decision was *per curiam* affirmed citing Strickland v. Washington, 466 U.S. 668 (1984). See Ramos v. State, 981 So.2d 275 (Fla. 3 DCA 2008).

Independent review of the record reveals as follows. During trial counsel's opening statements, counsel attempted to minimize the petitioner's exposure by conceding some of the elements of the crime of burglary, and further indicated that other offenses charged either did not occur, or occurred in a manner contrary to that given by the victim. (T.345-346). When the court realized the defense strategy included conceding some of the elements of the burglary offense at trial, it excused the jury, addressed counsel, and then specifically conducted the following colloquy on the record:

> COURT: Mr. Ramos, you understand that your attorney's defense in this case is going to be that the sexual battery and lewd and lascivious molestation did not occur. However, he will be acknowledging that you committed a burglary.
>
> Do you understand that?...
>
> DEFENDANT: Yes, si.
>
> COURT: And he discussed that strategy with you; your attorney and you are in agreement with that strategy?
>
> DEFENDANT: Yes.

(T.345-347).

Again, after closing argument, outside the jury's presence, the court conducted a colloquy on the record regarding the petitioner's agreement with the defense strategy, as follows:

> COURT: Okay. Let the record reflect that it's ten minutes to seven, that the jury went out.

|   | All right. Mr. Ramos, are you satisfied with the representations of your attorneys in this case? |
|---|---|
| DEFENDANT; | Yes, I am satisfied. |
| COURT: | Okay. And in the closing argument, just like in the opening statements, Mr. Surowiec basically asked the jury to find you guilty of a crime, lesser crime than the crime charged. He asked them to find you guilty of one of the lesser included offenses. |
|   | Were you in agreement with that strategy as well? |
| DEFENDANT: | Yes. |
| TRANSLATOR: | He didn't get the beginning, Your Honor. I moved over here. |
| DEFENDANT: | Your defense, according to your attorney in the closing argument, was that although you did break into the house and commit [sic] a crime, you did not commit the crime as charged, which was the sexual battery with a deadly weapon and assault and battery. |
|   | Did you speak to your attorney ahead of time about him acknowledging that you committed some crime, but just not the serious crime that was charged? |
| DEFENDANT: | Yes, I spoke to him. |
| COURT: | Okay. So are you in agreement with that? |
| DEFENDANT: | Yes, I agree with my attorney. |

(T.752-53).

The law is clear that conceding a client's guilt can be a reasonable trial strategy. See Florida v. Nixon, 543 U.S. 175 (2004). When counsel's strategy, given the evidence bearing on the defendant's guilt, is in his client's best interest and when the Strickland standard is satisfied, no tenable claim of ineffective assistance remains even where a defendant did not expressly consent to the strategy. Id.

Review of the trial court proceedings demonstrates that defense counsel presented the best possible defense under the circumstances of this case. The petitioner agreed with that strategy. Full review of trial counsel's opening statements and closing argument reveals

that counsel merely argued the facts and the law based upon the evidence to be presented or otherwise adduced at trial. Further, in light of the victim's testimony, it is apparent that defense counsel's theory was sound, amounting to proper trial strategy.

Here, by conceding that the petitioner committed at most the crimes of burglary, defense counsel was able to achieve credibility with the jury, and question other, more damaging evidence presented by the state regarding the offenses of sexual battery and lewd and lascivious molestation.[16] See Harich v. Dugger, 844 F.2d 1464, 1470 (11 Cir. 1988)(stating that competent trial counsel know that reasonableness is absolutely mandatory if one hopes to achieve credibility with the jury), cert. denied, 489 U.S. 1071 (1989), overruled on other grounds, Davis v. Singletary, 119 F.3d 1471, 1482 (11 Cir. 1997). See McNeal v. Wainwright, 722 F.2d 674, 675-76 (11 Cir. 1984)(holding that defense counsel's argument in first-degree murder prosecution without defendant's which suggested that defendant was "at best" guilty of manslaughter was made as a proper tactical decision, not amounting to unconstitutional representation).

Consequently, defense counsel did not render constitutionally ineffective assistance of counsel. Likewise, no due process violation has been demonstrated. The fact that the jury chose to find the petitioner guilty of the offenses does not indicate that trial counsel rendered ineffective assistance of counsel. As

---

[16]It should further be noted that the petitioner's agreement with the defense strategy was not impeded by any defective translation as maintained here. In fact, the translator acknowledged during one of the colloquies that it had changed locations, and asked the court to repeat the question. The court, in fact, repeated the question posed. Consequently, there is nothing whatsoever in the record to support the petitioner's allegation that he was provided deficient translations rendering his agreement with the defense strategy not knowing and voluntary. Therefore, this argument also fails as no deficient performance or prejudice has been established arising from counsel's failure to pursue this claim. See Strickland v. Washington, supra.

indicated above, it was the prerogative of the jury, it chose to believe the strong evidence admitted by the state and the testimony of the state witnesses. See Wilcox v. Ford, 813 F.2d at 1143. Under these circumstances, the rejection of the claim in the state forum was neither contrary to nor an unreasonable application of federal constitutional principles, and thus should not be disturbed here. Williams v. Taylor, supra.

In **claim seven**, the petitioner asserts that he was denied effective assistance of counsel, where his lawyer failed to interview witnesses, and conduct a proper investigation of information provided to him by the petitioner. (DE#1:6). According to the petitioner, counsel should have interviewed and called Rene Rodriguez and Celia Hernandez, the victim's mother, to testify at trial. (Id.). The petitioner proffers that Hernandez and Rodriguez would confirm that, during a conversation with Hernandez at a bar the night before the incident, she invited the petitioner to her home, and instructed him to go through a window in the event she was not there.

Review of the record reveals that prior to the commencement of trial, the court addressed the issue of defense witnesses with the parties. (T.77-78). In response to the court's inquiry, the petitioner directly advised the court that no witness list was filed because his attorney stated they did not have any witnesses. (T.78). When asked if he had any witnesses that could offer a defense, the petitioner responded that he wanted to call Rene Rodriguez to testify that he took the petitioner to the victim's house, and would be able to confirm the conversation with the victim's mother. (T.78-79). The petitioner explained, however, that the last time he had communicated with Rene Rodriguez was two years ago, prior to his going to jail. (T.79). He did not, however, indicate that he wanted Hernandez, the victim's mother to testify. Thereafter, the following

colloquy was conducted on the record:

COURT:        Have you ever told your attorney or any of the people
              who represented you about Rene Rodriguez?

DEFENDANT:    No. I communicated it in via letter, but I don't think
              the letter ever arrived.

COURT:        When you have met with your attorney because he has been
              in court many times and I have seen you have spent a
              great deal of time speaking to your attorney, not only
              today but in the past times, and there has been times
              that you have been in the jury with him for 40 minutes.

              During all those times, have you ever mentioned the name
              Rene Rodriguez to him?

DEFENDANT:    No. No, I have not.

COURT:        All right. Is Rene Rodriguez able to come here today to
              testify. Have you contacted him?

DEFENDANT:    No, I have not been in contact with him.

COURT:        Do you know his address or telephone number?

DEFENDANT:    I do know his phone number.

COURT:        All right. Do you want him to testify? Have here him,
              give the phone number to Mr. Surowiec, and Mr. Rodriguez
              has to be here tomorrow morning to give a deposition to
              the State.

DEFENDANT:    Okay.

COURT:        We'll do it during the break. All right.

                        *      *      *

DEF.ATTY:     Your Honor, he mentioned to me in the jury room like 40
              minutes ago the name...quite frankly, and I questioned
              him about that and it was my opinion that the person
              would be a -- would not be a witness to his defense.

COURT:        This is Rene Rodriguez?

DEF.ATTY:     Yes.

COURT:        From what he said, it did not sound like he would have
              much to say that would be relevant, if he wanted to have
              him testify.

(T.79-81).


When the identical claim was raised in the petitioner's Rule

35

3.850 proceeding, the trial court denied the claim, relying on Strickland, finding in pertinent part that "the Defendant cannot show that his attorney's actions in not investigating or calling witnesses *who the Defendant never even told him about* were outside the broad range of reasonably competent performance under prevailing professional standards. In addition, the Defendant has failed to show how he was prejudiced by the failure to call these witnesses, since their proffered testimony did not explain or dispute that he sexually assaulted the Victim." (Ex.K:17). That decision was *per curiam* affirmed citing Strickland v. Washington, 466 U.S. 668 (1984). See Ramos v. State, 981 So.2d 275 (Fla. 3 DCA 2008).

Independent review of the record reveals that the court's rejection of this claim was not error. The petitioner has provided no affidavit or other evidence to demonstrate that these witnesses would have, in fact, testified as proffered. Such a bare and conclusory allegation is subject to summary dismissal. Machibroda v. United States, 368 U.S. 487 (1962). Additionally, as found correctly by the state court, even if they had testified as proffered, this would not have affected the outcome of the trial, in light of the overwhelming evidence of the petitioner's guilt, which included DNA evidence, post-arrest statements, and the victim's testimony. Consequently, the petitioner cannot satisfy either Strickland prong and is entitled to no relief on this claim. Thus, the rejection of the claim in the state forum should not be disturbed here. Williams v. Taylor, supra.

In **claim eight**, the petitioner asserts that the trial court erred in denying the petitioner's request for DNA testing on an item introduced into evidence by the prosecution, which the petitioner maintains would have exonerated him. (DE#1:7). According to the petitioner, he wanted the knife found in the victim's bedroom to be tested to establish that he never possessed it during the offenses.

(Id.).

When the identical claim was raised in the petitioner's Rule 3.850 proceeding, the trial court denied the claim, relying on Strickland, and finding in pertinent part that "the DNA testing of the knife would have no impact on the Defendant's burglary conviction in Count One." (Ex.K:18). Likewise, regarding the other offenses of conviction,[17] the court rejected the claim on the following finding:

> The State never argued to the jury that the knife found in the Victim's room was definitely the sharp object used by the Defendant while committing the sexual battery upon the Victim; instead, they acknowledged that the Victim never saw a weapon, but what was important was his *threat* to use a weapon, evidenced by the Victim's description of the Defendant's threats to kill her as he pushed a sharp object in her side (p.699-700, State's closing argument, attached hereto).
>
> Under Florida law, a defendant can be convicted of sexual battery while threatening to use a deadly weapon when the defendant threatens the victim with a weapon which is unseen and never discovered. In *Shelby v. State*, 541 So.2d 1219 (Fla. 2nd DCA 1989), the court held that the mere representation by the defendant that he had a gun in his pocket was sufficient to support a charge of sexual battery while using or threatening to use a deadly weapon. 'The assailant who chooses to utter such a threat, under circumstances that cause a reasonable victim to believe the threat, should be held to the consequences of the manner of threat he chooses to make,' *Shelby*, at 1221. See also, *Gibbs v. State*, 623 So.2d 551 (Fla. 4th DCA 1993) (defendant's conviction for armed sexual battery affirmed based on threats to slit victim's throat with a knife, although weapon was unseen and undiscovered).
>
> In this case, the Defendant admits that he had sexual relations with the Victim, but claims she consented and that he did not know that she was a minor (see p. 31,

---

[17]The trial court found correctly that the jury returned a special verdict finding that "the Defendant used or threatened to use a deadly weapon." (Ex.B). The court further relied upon the victim's trial testimony which revealed that during the assault the petitioner put a quilt over her head, pushed a sharp object into her side, and threatened to kill her. (T.357-358,374-75). The victim also acknowledged that she never saw a knife or other weapon in the petitioner's hand before he put a quilt over her head. Although the victim kept a knife in her room and she identified the knife at trial, she could not testify with certainty that the sharp object the petitioner pressed into her side was that object.

> Defendant's motion). Any DNA testing of the knife found
> in the Victim's room would not exonerate the Defendant
> or mitigate his sentence. The Defendant was found guilty
> based on his *threats* to use a weapon, not because he
> used or displayed a particular weapon. The Defendant's
> motion for DNA testing pursuant to Rule 3.853 is denied
> as legally insufficient.

(Ex.K:18-19). That decision was *per curiam* affirmed <u>citing</u> <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>See</u> <u>Ramos v. State</u>, 981 So.2d 275 (Fla. 3 DCA 2008). Independent review of the record reveals that the court's decision in this regard was not error. Even if counsel had sought testing of the knife, no showing has been made in this collateral proceeding that it would have affected the guilt phase portion of the petitioner's trial. To the contrary, at best, the defense would merely have been able to argue that the subject knife did not possess the petitioner's DNA, and therefore was not the sharp object used by the petitioner during the attacks. Regardless, as found correctly by the state court, this evidence would have been cumulative to the victim's own testimony that she could not state with certainty that the subject knife was the object used by the petitioner while he threatened her during the assault.

It is also important to note that there is no evidence of record to indicate that had the subject evidence been preserved and tested for the petitioner's DNA, that no DNA would have been found linking the knife to the petitioner. However, even accepting as true that the petitioner never possessed the knife, that fact alone would not serve to prove his innocence. The evidence admitted at trial revealed that immediately after the subject incident, the victim provided a detailed description of the incident, and DNA evidence taken from the victim during a rape treatment examination matched the petitioner's DNA. Also, the evidence included the inculpatory statement made by the petitioner to the police, after he had been fully advised of his constitutional rights pursuant to <u>Miranda v.</u>

<u>Arizona</u>, 384 U.S. 436 (1966) and had waived those rights.

Besides the purely speculative DNA evidence, the petitioner has come forward with no new reliable evidence to support his claim of actual innocence. The petitioner provides no evidence that he was with anyone else or somewhere else at the time of the subject crimes. To the contrary, his argument in the state proceeding was that he was "high" on drugs and alcohol at the time of the offenses. Consequently, the petitioner cannot establish deficient performance or prejudice arising from counsel's failure to pursue this claim. The state court's rejection of the claim was proper and should not be disturbed here. <u>Williams v. Taylor</u>, <u>supra</u>.

To the extent the petitioner is challenging his convictions on the basis of potentially exculpatory evidence of actual innocence and/or newly discovered evidence, he is not entitled to relief. It is well settled that the "existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus." <u>Townsend v. Sain</u>, 372 U.S. 293 (1963). Further, the Supreme Court has held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993). It is not the role of the federal courts to make an independent determination of a petitioner's guilt or innocence based on evidence that has emerged since the trial. <u>See</u> <u>Brownlee v. Haley</u>, 306 F.3d 1043, 1065 (11 Cir. 2002). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact." <u>Id.</u>, <u>quoting</u>, <u>Herrera</u>, 506 U.S. at 400. The petitioner alleges no independent constitutional violation relating to the alleged newly discovered evidence. He has, therefore, failed to meet the high

standard for actual innocence. See <u>Bousley v. United States</u>, 523 U.S. 614 (1998); <u>Schlup v. Delo</u>, 513 U.S. 298, 327-328 (1995).

In conclusion, it is clear from the record when viewed as a whole that the petitioner received able representation more than adequate under the Sixth Amendment standard. See <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

Lastly, to the extent the petitioner appears to argue that he is entitled to a federal evidentiary hearing on his claims, that claim also warrants no habeas corpus relief here. If a habeas corpus petitioner "alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of the claim." <u>Holmes v. United States</u>, 876 F.2d 1545, 1552 (11 Cir. 1989), <u>quoting</u> <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11 Cir. 1987). However, no hearing is required where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous. <u>Holmes</u>, <u>supra</u> at 1553. Here, for the reasons which have been discussed, the petitioner's claims are all affirmatively contradicted by the existing record, so no federal hearing is necessary or warranted.

<u>Conclusion</u>

For the foregoing reasons, it is recommended that this petition for habeas corpus relief be denied.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Signed this 22nd day of May, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

```
cc:  Denis Ruenes Ramos, Pro Se
     DCM49156
     Glades Correctional Institution
     500 Orange Avenue Circle
     Belle Glade, FL 33430-5222

     Ansley B. Peacock, Ass't Atty Gen'l
     Office of the Attorney General
     Department of Legal Affairs
     444 Brickell Avenue, Suite 650
     Miami, FL 33131
```